# IN THE DISTRICT COURT IN AND FOR WASHINGTON COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT WASHINGTON CO OK
JILL L. SPITZER COURT CLERK

F
I   MAY 05 2021
L
E
D
BY _____ DEPUTY

MUSSELMAN ABSTRACT COMPANY,  )
)
    Plaintiff,  )
)
VS.  )    Case No. CV-2021-39
)
KATHLEEN B. MULLENDORE TRUST  )
AND HUNTER MORRIS,  )
)
    Defendants.  )

## PETITION AND INTERPLEADER

COMES NOW Musselman Abstract Company and shows to the Court as follows:

1. That Musselman Abstract Company is an Oklahoma corporation and is located in Washington County, Oklahoma, and that the funds hereinafter described are deposited in its Trust Account located in Washington County, Oklahoma.

2. That the Defendants entered into a Contract for Sale of Real Estate and a Supplement thereto, copies of which are attached hereto with the purchase price blocked out by Plaintiff for privacy purposes.

3. That pursuant to said Contract, the Defendant, Hunter Morris, deposited with Plaintiff as escrow holder the sum of $500,000.00 on March 12, 2021.

4. That both of said Defendants are asserting that they are entitled to said sum, and both of said Defendants have made demand of payment for the full amount held in escrow.

5. That the Plaintiff makes no claim of entitlement to said sum and is depositing said sum with the Court Clerk simultaneously with the filing of this Petition.

6. That the Plaintiff has incurred court costs and attorney fees and is entitled to an Order of the Court directing the Court Clerk to pay out of said funds so deposited the reasonable attorney fees and court costs of the Plaintiff.

WHEREFORE, Plaintiff prays that it be discharged as a party hereto subject to a Court Order determining reasonable attorney fees and court costs to be paid to the Plaintiff out of the escrow funds, and for all other relief that is just and proper.

**EXHIBIT
2**

MADDUX & IHRIG
ATTORNEYS FOR PLAINTIFF


BY _____

JERRY M. MADDUX, OBA #5615
224 E. 4TH ST.
BARTLESVILLE, OK  74003
(918) 214-8040

STATE OF OKLAHOMA      )
                       )SS:
WASHINGTON COUNTY      )

    Andrew M. Ihrig, of lawful age, being first duly sworn on his oath, states:  That he is the President of the Plaintiff above named and has read the foregoing Petition and that all of the allegations contained therein are true and correct.


_____
ANDREW M. IHRIG

Subscribed and sworn to before me this 5th day of May, 2021.

(SEAL)

**Vicky L. Tyndall**
Notary Public- State of Oklahoma
Commission No 02011796
Commission Exp. 8-24-2022

_____
NOTARY PUBLIC

Farm and Ranch Contract: <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>

Property Identifier

# OKLAHOMA REAL ESTATE COMMISSION

*This is a legally binding contract; if not understood, seek legal advice from an attorney.*
**This form is recommended for use by only licensees who specialize in farm, ranch, and recreational land transactions**

# OKLAHOMA UNIFORM CONTRACT OF SALE OF REAL ESTATE
# FARM, RANCH, AND RECREATIONAL LAND

**CONTRACT DOCUMENTS.** The Contract is defined as this document with the following attachments(s):

**(check supplements as applicable)**

| | |
|---|---|
| ☑ Legal Description | ☐ Supplement |
| ☐ Accessories | ☑ Exhibit A |
| ☐ Rural Property Conventional Loan | ☐ Exhibit B |
| ☐ Seller Financing | ☐ _____ |
| ☐ Removal of Livestock | ☐ _____ |

**PARTIES.** THE CONTRACT is entered into between:

_____ "Seller"

and <u>Hunter Morris and/or assigns</u>_____ "Buyer"

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. This agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and permitted assigns. The Contract shall be executed by original signatures of the Parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo, fax or other electronic copy). The Parties agree that as to all aspects of this transaction involving documents an electronic signature shall have the same force and effect as an original signature pursuant to the provisions of the Uniform Electronic Transactions Act, 12A, Oklahoma Statutes, Section 15-101 et seq. All prior verbal or written negotiations, representations and agreements are superseded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

**1. PURPOSE.** The undersigned Buyer hereby agrees to purchase from the undersigned Seller the following real property, to wit.

**2. PROPERTY.** The land, appurtenances, improvements, accessories and crops are collectively referred to as the "Property".

    **A.**   **LAND.** The land situated in <u>Osage County & Washington County</u> County, Oklahoma, described as follows:

      <u>legal description attached - 19,200 acres known as "Crossbell Ranch" (40 acres located in Chautauqua County, Kansas)</u>

      _____, or as described on

      the <u>attached Legal Description Supplement</u>, also known as (property address/zip code) _____

      <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>

      **(Check one)**

      1)  ☑ together with all of Seller's right, title, interest and estate in and to oil, gas and other minerals in and under the Land not previously reserved or conveyed of record. <u>The Seller does not warrant the amount of minerals owned or that the Seller owns any minerals whatsoever, unless specifically provided in the Special Provisions Paragraph of the Contract.</u>

        **OR**

        ☐ less and except; all oil, gas and other minerals related to the extraction of oil & gas and the following specific mineral interests, _____, in and under the Land; <u>all other unspecified minerals in and under the land will transfer with the surface rights.</u>

      2)  together with all of the buildings, structures and improvements in, on or under the Land, and existing rural water tap rights, if any, including applicable certificates and all rights thereto (the "Improvements");

      3)  together with all of the appurtenances belonging thereto and all of Seller's right, title and interest in and to all streets, alleys and other public ways adjacent to the Land;

      4)  together with all rights to any Natural Gas supply agreements with Natural Gas mineral owners, lease holders or producers, if any. <u>The Seller does not warrant the future execution of these agreements;</u>

      5)  subject to existing zoning ordinances, restrictions, easements, rights of way and _____.

    **B.**   **IMPROVEMENTS.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

      1)  <u>Farm, Ranch and Recreation Land Improvements.</u> The following permanently installed and built-in items, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, corrals; and _____

      2)  <u>House(s).</u> Number of houses on the property (Check One) : ☐ NONE or ☑ 6 (number)

      3)  <u>Residential Improvements, if any.</u> The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mailboxes, television antennas and satellite dish systems and equipment, heating and air conditioning units, security and fire detection equipment, wiring, plumbing and

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

**OREC FARM, RANCH, AND RECREATIONAL SALE (01-2019)**                                    Page 1 of 8

Farm and Ranch Contract: 3484 Mullendore Ranch Rd, Copan, OK 74022
_____Property Identifier_____

light fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property; and: _____

C. **ACCESSORIES.** The following items, if existing on the Property, unless otherwise excluded, shall remain with the Property at no additional cost to Buyer:

1) Farm, Ranch and Recreation Accessories. The following described related accessories (check items of *conveyed* accessories):
   - ☑ portable buildings
   - ☑ hunting blinds
   - ☑ game feeders
   - ☑ livestock feeders and troughs
   - ☑ irrigation equipment
   - ☑ submersible pumps
   - ☑ pressure tanks
   - ☑ fuel tanks if owned (propane, gasoline, diesel)
   - ☑ corrals
   - ☑ chutes
   - ☑ gates
   - ☐ See Accessories Supplement.

2) Residential Accessories, if any. The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, controls for satellite dish systems, controls for garage door openers, entry gate controls, door keys, mail box, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs and _____.

D. **CROPS.** Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property. any and all crops will convey to buyer _____.
(Check One) Grasses and trees ☐ are  ☑ are NOT considered crops in the Contract.

E. **EXCLUSIONS.** The following improvements, accessories and crops will be retained by Seller and excluded from this Contract:

3. **TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Earnest Money Deposit, Proof of Funds, Investigations, Inspections and Reviews and Financing Supplement Agreement shall commence on _____ (Time Reference Date), regardless of the date the Contract is signed by Buyer and Seller. The day after the Time Reference Date shall be counted as day one (1). If left blank, the Time Reference Date shall be the third day after the last date of signatures of the Parties.

4. **TERMS.**

A. **PURCHASE PRICE.** Buyer shall pay for the Property the sum of (█████████████) (sum of B, C & D below) payable as follows:

B. **EARNEST MONEY.** The sum of $ 500,000.00_____ as Earnest Money, shall be deposited in the trust account of TBD_____ or if left blank, the Listing Broker's trust account ☐ with submission of this contract or  ☑ within 3_____ days after the day of the final signature(s) executing this Contract, to be applied on the purchase price and/or closing costs, if any, at the time of closing. If Buyer fails to deposit the Earnest Money as required by this Contract, Buyer will be in default.

C. **CASH AT CLOSING.** Cash portion of Purchase Price payable by Buyer $ ███████████.

D. **LOAN FUNDING.** The sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) is $ n/a_____

E. **ADJUSTED PURCHASE PRICE.** The Purchase Price (check one): ☐ will  ☑ will not be adjusted based on the survey required by Paragraph 7A. If the Purchase Price is adjusted, the Purchase Price will be calculated on the basis of $ ██████ per acre. If the Purchase Price is adjusted by more than n/a_____ %, either Party may terminate this Contract by providing written notice to the other Party within n/a_____ days after the terminating Party receives the survey. If neither Party terminates this Contract or if the variance is n/a_____ % or less, the adjustment will be made to the amount in:
(Check One): ☑ 4.C. ☐ 4.D. ☐ proportionately to 4.C. and 4.D.

5. **FINANCING.** The portion of the Purchase Price not payable in cash will be paid as follows (check applicable items below):

A. ☐ **CONVENTIONAL LOAN.** This Contract is subject to financing described in the attached **Convention Loan Supplement** for one or more third Party mortgage loans in the total amount of $ _____. (Excluding any loan funding fee or mortgage insurance premium).

B. ☐ **SELLER FINANCING.** As reflected on the attached **Seller Financing Supplement.**

C. ☑ **This Contract is "CASH ONLY" and is NOT subject to ANY FINANCING REQUIREMENTS.**
(Check One)  This Contract ☑ is subject to ☐ is NOT subject to verification of Buyer's Proof of Funds below:

1) **Proof of Funds:** Buyer shall provide the following within three (3) days after the Time Reference Date in Paragraph 9:
   a. A letter of financial capabilities from a banking institution on bank letter head verifying that Buyer has the necessary cash or line of credit in an amount equal to or in excess of the Purchase Price herein.
   OR
   b. A copy of a Bank Statement showing sufficient funds to fulfill the Buyer's obligations of this Contract.
   c. Buyer hereby gives permission to the Seller and the Seller's Broker, if applicable, or representatives to contact the banking institution providing the letter of financial capabilities or the financial institution shown on the copy of a Bank Statement, to verify said information.

2) If Buyer does not provide proof of funds as indicated in 5.C.1) of this subparagraph, this Contract shall become null and void.

3) If banking or financial institution information provided can not be verified to the satisfaction of the Seller within two (2) business days after receipt the Seller may cancel this Contract with written notice by mail, photo, fax or electronic copy delivered to the Buyer as provided in the Notices Paragraph 27.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

Farm and Ranch Contract: 3484 Mullendore Ranch Rd, Copan, OK 74022
Property Identifier

**6. TITLE EVIDENCE.** Seller, within 10_____ days (Ten (10) days if left blank) prior to Closing Date, agrees to make available to Buyer Title Evidence as follows:

**A. Abstracting**

    1) Seller shall furnish a complete and current surface-rights-only Abstract of Title, certified by an Oklahoma-licensed and bonded abstract company;
        **OR**
        A copy of Seller's existing owner's title insurance policy issued by a title insurer licensed in the State of Oklahoma together with a supplemental and current surface-rights-only certified by an Oklahoma-licensed and bonded abstract company, and

    2) A current Uniform Commercial Code Search Certificate.

**B. Required Form of Title Evidence:**

    **(Check one)**

    1) ☑ **Abstract of Title** (unless otherwise specified in the Special Provisions Paragraph 16).

        a. Seller, at Seller's Expense shall pay all abstracting pursuant to subparagraph 6(A).
        b. Buyer shall pay, at Buyer' expense, the attorney's Title Opinion, not for purposes of Title Insurance, and all other costs associated with obtaining a Mortgagee's Title Insurance Policy, if required by the Lender(s).

    2) ☐ **Commitment for Owner's Title Insurance Policy** (unless otherwise specified in Closing and Funding Paragraph 14).

    3) **Access Notice:** Broker advises Buyer to determine physical and legal access availability to their satisfaction.

**C. (Check appropriate Seller's and Buyer's Expense)**

| Seller's Expense: | Buyer's Expense: | (Boxes NOT checked are NOT APPLICABLE) |
|---|---|---|
| ☐ | ☑ | The premium for such surface-rights-only Owner's Title Policy |
| ☑ | ☐ | All surface-rights-only abstracting (prior to closing fees) |
| ☐ | ☐ | A Mortgage Inspection Report (a representation of the boundaries of the Property and the improvements thereon), if required by Lender(s) |
| ☐ | ☑ | The attorney's fees for examination of the abstract (Base or Supplemental) as required by Title Company |
| ☐ | ☑ | The final title report and/or recertification fee as required by Title Company (post-closing fees) |
| ☐ | ☐ | The Mortgagee's Title Insurance Policy, if any |

**7. SURVEY AND TITLE REVIEW.**

**A. SURVEY.** The survey or boundary (Pin Stake) survey must be made by a surveyor acceptable to the Title Company and any Lender. **(check one box only):**

    1) ☐ Within_____ days after the **Time Reference Date** of this Contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.
    2) ☐ Within_____ days after the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall obtain a new survey.
    3) ☐ Within_____days after the **Time Reference Date** of this Contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey. The existing Survey (check one): ☐ will ☐ will not be recertified to a date subsequent to the **Time Reference Date** of this Contract at the expense of (check one): ☐ Buyer ☐ Seller. If the existing survey is not approved by the Title Company or Buyer's Lender, a new survey will be obtained at the expense of (check one): ☐ Buyer ☐ Seller no later than _____ days (three (3) days if left blank) prior to the Closing Date.
    4) ☑ Survey is NOT REQUIRED (see subparagraph 7.E.4)
    5) ☐ Other: _____.

**B. OBJECTIONS.** Buyer shall have 10____ days (ten (10) days if left blank) after receipt to examine the Title Evidence and to deliver Buyer's objection to Title. In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.

**C. SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE). POSSIBLE CLOSING DELAY.** Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the Parties agree to the following:

    1) At Seller's option and expense, may cure title requirements identified by Buyer;
    2) Delay Closing Date for 30____ days (thirty (30) days if left blank), or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's title requirements. In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure. In the event that title requirements are not cured within the time specified in this Paragraph, the **Buyer may cancel the Contract and receive a refund of Earnest Money**; and
    3) Buyer agrees to accept title subject to: (a) utility easements serving the property, (b) building and use restrictions of record, (c) set back and building lines, (d) zoning regulations, and (e) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.

**D. SURFACE LEASES.** Seller shall provide Buyer with copies of existing written leases and give written notice of oral leases within 3_____ days (three [3] days if left blank) of the Time Reference Date. **If there are NO existing Leases this paragraph is not applicable.**

    1) If Seller does not provide copies of existing said written leases or give written notice of oral leases within the three (3) days after the Time Reference Date the provisions of Paragraph 20 shall apply. The Seller shall be in default of this Agreement.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

Farm and Ranch Contract: <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>

Property Identifier

2) This Contract is subject to Buyer review, acceptance and approval of said leases, if any, <u>within five (5) days of the receipt of said leases.</u>

3) <u>If the Buyer fails to give notice of objection to the leases, as above, the leases shall be deemed acceptable to the Buyer.</u>

4) The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: _____
_____.

E. **BROKER NOTICES.**

1) <u>Abstract or Title Policy.</u> Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's election or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer' choice due to the time limitations on Buyer' right to object in subparagraph 7.B.

2) <u>Annexation.</u> If the Property is located outside the limits of a municipality, Seller notifies Buyer that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

3) <u>Unimproved Property Located in the Area of a Utility Service Provider.</u> If the Property is located in an area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, the Broker advises Buyer to obtain costs estimates necessary to utilize said services.

4) <u>Exterior Fences and Roadways.</u> Broker advises that exterior fences and roadways may or may not be located on a surveyed boundary.

5) <u>Water Rights and Permits.</u> Contact the Oklahoma Water Resources Board.

6) <u>Oil & Gas and other Mineral Rights.</u> Contact the Oklahoma Corporation Commission.

7) <u>Mining Operations and Permits.</u> Contact Oklahoma Department of Mines.

8. **ACCEPTANCE OF PROPERTY.** Buyer, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, or Seller's Broker and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

9. **INSPECTIONS, ACCESS AND UTILITIES.**

   A. The Buyer agrees and acknowledges that Seller, Seller's Broker and their licensed associates, are not experts regarding the condition of the Property. No representations, warranties, or guarantees regarding the condition of the Property, or environmental hazards, are expressed or implied except as may be specified by Seller in the Special Provisions Paragraph 16.

   B. Buyer shall have <u>45</u> days (ten (10) days if left blank) after the **Time Reference Date** to complete any investigations, inspections, and reviews by inspectors selected by Buyer and licensed by the state or otherwise permitted by law to make inspections. Seller shall permit Buyer and Buyer's Broker, if applicable, access to the Property at reasonable times. Seller shall pay for turning on existing utilities for inspections. **Notice.** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs. The Broker advises Buyer to obtain Termite, Home, Radon Gas, Mold, Septic, Well and Environmental Inspections.

   C. Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with Buyer's representative(s), independent contractor(s) and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, tests, studies and reviews. If the property and buildings thereon are secured by locks, the Seller will provide access within 24 hours of a written request. Excepting only the negligence of Seller or a condition caused or permitted by Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all claims, demands, losses, liabilities, costs, fees and expenses (including attomey's and consultant's fees) arising out of or related to Buyer's entry onto the Property in connection with any testing or investigation performed pursuant to this Contract. Buyer's investigations, inspections and reviews may include, but may not be limited to, the following:
   1) Flood, Storm Run-off Water, Storm Sewer Back-up or Water History
   2) Roof, Structural members, roof decking, coverings and related components
   3) Hazard Insurance
   4) Structural Inspection
   5) Use of Property (property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations)
   6) Square Footage/Acreage (buyer shall not rely on any quoted square footage and/or acreage and shall have the right to measure the property)
   7) Home Inspection (if applicable)

   D. **ENVIRONMENTAL MATTERS.** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the property. This offer ☑ **is** ☐ **is not** contingent upon the Buyer, at Buyer's cost, obtaining an acceptable Environmental Site Assessment Report within <u>the time frame set in the Inspection, Access and Utilities subparagraph 9.B.</u> If the Environmental Site Assessment Report is not obtained in the specified time period, this contingency shall be considered waived by the Buyer.

   E. **EQUIPMENT AND SYSTEMS.** Within <u>45</u> days (ten (10) days if left blank) from the Time Reference Date of this Contract, Buyer, at Buyer's expense, shall have the right to inspect all fixtures and equipment relating to plumbing, heating and cooling, electrical systems and any other equipment or systems and shall report any item not in normal working order, in writing, to Seller, in care of Seller's Broker, if applicable, including a copy of the estimated cost to repair such items. If the total estimated cost to Seller of such repairs and replacement required by this paragraph exceeds $<u>n/a</u>, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay repair and replacement costs in excess of such amount.

   F. **WOOD DESTROYING INSECTS INSPECTION.** Buildings on property, if any. Within <u>45</u> days (ten (10) days if left blank) from the **Time Reference Date** of this Contract, Buyer shall have the right to have the Property inspected by Buyer's choice of a licensed exterminating company and deliver to Seller, in care of Seller's Broker, if applicable, an infestation report. The expense of such report shall be the Buyer's expense. In the event the report shows visible infestation or visible damage, Seller agrees, at Seller's expense, to treat and/or repair same, provided the estimated cost to cure such infestation or damage does not exceed $<u>n/a</u>. If the estimated cost exceeds

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

OREC FARM, RANCH, AND RECREATIONAL SALE (01-2019)                                                   Page 4 of 8

Farm and Ranch Contract: <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>

Property Identifier

such amount, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay any costs in excess of such amount.

**G.  BUYER'S RIGHT TO OBJECT OR CANCEL.** If, upon Buyer's investigation, inspections and reviews, the Buyer shall give  written notice to the Seller of:

1) Removal of Contingencies, which indicates acceptance of the reports with NO OBJECTIONS.
   **OR**
   Objections to items in the report along with a copy of the report(s) by delivery to the Seller, in care of Seller's Broker, if applicable, within the respective time frames. The Seller shall be given <u>3</u> days (three (3) days if left blank) to cure the objections at the Seller's expense or enter into a written agreement for the Buyer to have a dollar amount to be adjusted at closing, as a Seller's expense.
2) If the Seller does not cure the objections and does not enter into a written agreement with the Buyer to have a dollar amount to be adjusted from the proceeds at closing as a Seller's expense within the respective time frames, the Buyer may cancel and terminate this Contract and receive a refund of  the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, as provided in Paragraph 27 within twenty-four (24) hours of the expiration of the time period specified in this provision.

**H.  EXPIRATION OF BUYER'S RIGHT TO CANCEL CONTRACT.**   Failure of the Buyer to complete one of the following within the respective time frames shall constitute acceptance of the Property regardless of its condition:
   1) Perform any investigations, inspections or Reviews.
   2) Deliver a written list of objections or items to be treated, repaired and replaced.

**10.  SELLER'S DISCLOSURES.** Except as otherwise disclosed in this Contract, Seller has <u>no</u> knowledge of the following (check as applicable):
   A.  ☑  Flooding of the Property which has had a material adverse effect on the use of the Property.
   B.  ☑  Pending or threatened litigation, condemnation, or special assessment affecting the Property.
   C.  ☑  Dumpsite, landfill, or underground tanks or containers now or previously located on the Property.
   D.  ☑  Wetlands, as defined by federal or state law or regulation, affecting the Property.
   E.  ☑  Threatened or endangered species or their habitats affecting the Property.
   F.  ☐  Other:_____

**11.  GOVERNMENT PROGRAMS:** The Property is subject to the government programs listed below or on the attached exhibit:_____
<u>BLM Sanctuary Horse Program renewed in January 2020 with a 10 year term</u>
Seller shall provide Buyer with copies of all governmental program agreements.  Any allocation or proration of payment under governmental programs is made by separate agreement between the Parties which will survive Closing.

**12.  RESIDENTIAL PROPERTY CONDITIONS.**
   ☐ Check if there is NO residential house(s) on the Property.  (If checked disregard this paragraph).

   A.  **RESIDENTIAL PROPERTY CONDITION DISCLOSURE.**  No representations by Seller regarding the condition of Property or environmental hazards are expressed or implied, other than as specified in the Oklahoma Residential Property Condition Disclosure Statement ("Disclosure Statement") or the Oklahoma Property Condition Disclaimer Statement ("Disclaimer Statement"), if applicable.  A real estate licensee has no duty to Seller or Buyer to conduct an independent inspection of the Property and has no duty to independently verify accuracy or completeness of any statement made by Seller in the Disclosure Statement and any amendment or the Disclaimer Statement.

   B.  **LENDER REQUIRED REPAIRS AND TREATMENTS.** Unless otherwise agreed in writing, neither Party is obligated to pay for lender-required repairs, which includes treatment for wood destroying insects. If the Parties do not agree to pay for the lender required repairs or treatments, this Contract will terminate and the Earnest Money will be refunded to Buyer.  If the cost of lender required repairs and treatments exceeds <u>n/a</u> % of the Purchase Price, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

   C.  **RESIDENTIAL SERVICE CONTRACTS.** Buyer may purchase a residential service contract from a residential service company licensed by the state.  If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential Contract in an amount not to exceed $ <u>n/a</u> .  Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional.  Similar coverage may be purchased from various companies authorized to do business in the state.

**13.  BROKER'S FEES.** All obligations of the Parties for payment of brokers' fees are contained in separate agreements. <u>All Parties herein direct the Listing and Selling Brokers to provide the Closing Agent with copies of the compensation agreements between the Buyer's and Seller's and their respective Broker's to facilitate payment to the respective Brokers at the time of closing or as Buyer and Seller and their respective Broker(s), if applicable, agree in writing on the attached</u>_____.

**14.  CLOSING and FUNDING.**

   A.  The closing of the sale will be on or before <u>90 days from Executed Contract</u>_____, or upon delayed closing pursuant to the Survey and Title Review Paragraph 7.C.2) whichever date is later (Closing Date).  If either Party fails to close the sale by the Closing Date, the non-defaulting Party may exercise the remedies contained in the Default Paragraph 20.

   B.  No Fault Closing Delay: Buyer and Seller agree to a closing date extension of up to <u>5</u> days (five (5) days if left blank) if closing is delayed due to the abstracting company, closing company, lender or title company not under the control of the Buyer or Seller.

   C.  At closing:
      1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in the Survey and Title Review Paragraph 7.C.3) an assignment of Leases, and furnishes tax statements or certificates showing no delinquent taxes on the Property.
      2) Buyers shall pay the Purchase Price in good funds acceptable to the escrow agent.
      3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this Contract, the Commitment or Law necessary for the closing of the sale and the issuance of the Title Policy.
      4) Upon Closing, the existing abstract of title, if owned by Seller, shall become the property of Buyer.

   D.  All covenants, representations and warranties in this Contract survive closing.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

dotloop signature verification: dtlp.us/PVM-2iG3-OUuM

Farm and Ranch Contract: 3484 Mullendore Ranch Rd, Copan, OK 74022

Property Identifier

**15. POSSESSION.** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted (check one): ☑ upon closing and closing which is not authorized by a written lease required by the Parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the Parties. Consult your insurance agent prior to change of ownership or possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the Parties to economic loss.

**16. SPECIAL PROVISIONS. 1. See attached Exhibit A**
2. Any equipment used for operations of the horse program will convey with the ranch to the buyer.

**17. SETTLEMENT AND OTHER EXPENSES.**
 A. The following expenses must be paid at or prior to closing:
  1) Expenses payable by Seller (Seller's Expenses).
   a. Releases of existing liens, including prepayment penalties and recording fees; release of Seller loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; title expenses in the Title Evidence subparagraph 6.B. and other expenses payable by Seller under this Contract.
   b. Seller shall also pay an amount not to exceed $ n/a _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, state-coordinated veteran's housing assistance programs, or other governmental loan programs; Buyer' prepaid items; other Buyer' expenses.
  2) Expenses payable by Buyer (Buyer's Expenses).
   a. Loan origination, discount, buy-down, and commitment fees (Loan Fees).
   b. Termite Inspection fees; Property Inspection fees; Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; courier fee, repair inspection, underwriting fee and wire transfer; expenses incident to any loan; title expenses in subparagraph 6.B. and other expenses payable by Buyer under this Contract.
 B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the Lender.
 C. If any expense exceeds an amount expressly stated in this Contract for such expense to be paid by a Party, that Party may terminate this Contract unless the other Party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, state-coordinated veteran's housing assistance programs or other governmental loan program regulations.

**18. PRORATIONS OF TAXES.** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the Parties shall adjust the proration when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

**19. CASUALTY LOSS.** If any part of the Property is damaged or destroyed by fire or other casualty after the Time Reference Date of this Contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event, by the Closing Date. If Seller fails to do so due to factors beyond Seller' control, Buyer may: (a) terminate this Contract and the Earnest Money will be refunded to Buyer; (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary; or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller obligations under this paragraph are independent of any obligations of Seller under the Acceptance of Property Paragraph 8.

**20. DEFAULT.** Seller or Buyer will be in default if either fails to comply with any material covenant, agreement, or obligation within the time limits required by this Contract. **TIME IS OF THE ESSENCE IN THIS CONTRACT.**
 A. If Buyer fails to comply with this Contract, Buyer will be in default, and Seller may:
  1) enforce specific performance, seek such other relief as may be provided by law, or both; or
  2) terminate this Contract and receive the Earnest Money as liquidated damages, thereby releasing both Parties from this Contract.
 B. If, due to factors beyond Seller' control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may:
  1) extend the time for performance up to 15 days and the Closing Date will be extended as necessary; or
  2) terminate this Contract as the sole remedy and receive the Earnest Money.
 If Seller fails to comply with this Contract for any other reason, Seller will be in default and Buyer may: (a) enforce specific performance, seek such other relief as may be provided by law, or both; or (b) terminate this Contract and receive the Earnest Money, thereby releasing both Parties from this Contract.

**21. DISCLAIMER AND INDEMNIFICATION.** It is expressly understood by Seller and Buyer that Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees do not warrant the present or future crop productivity including grasses, water availability above or below ground, size by square footage or acreage, condition, structure, or structure systems of the Property or any building, nor do they hold themselves out to be experts in quality, design and construction. Seller and Buyer shall hold the Listing Broker and its affiliated licensees and Selling Broker and its affiliated licensees harmless in the event of losses, claims or demands by or against Seller or Buyer. This paragraph shall survive the Closing.

**22. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.**
 A. **INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the Party incurring such expenses and shall not be paid from earnest money.
 B. **RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of earnest money held in escrow, the escrow holder shall retain said earnest money until one of the following occur:
  1) A written release is executed by Buyer and Seller agreeing to its disbursement;
  2) Agreement of disbursement is reached through Mediation;
  3) Interpleader or legal action is filed, at which time the earnest money shall be deposited with the Court Clerk; or

---

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

Farm and Ranch Contract: <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>
_____
Property Identifier

4) The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above has not been exercised; Broker escrow holder, at Broker's discretion, may disburse earnest money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

**23.  REPRESENTATIONS.**

    **A.** Seller represents that as of the Closing Date: (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer, and (b) assumed loans will not be in default.  If any representation of Seller in this Contract is untrue on the Closing Date, Buyer may terminate this Contract and the Earnest Money will be refunded to Buyer.

    **B.** Buyer represents that they have **NOT** relied on any quoted acreage and/or square footage from any source and have had the right to measure the land or buildings on the Property to their satisfaction prior to closing.

**24.  TAX DEFERRED EXCHANGE 1031.** In conformance with Section 1031 of the Internal Revenue Code, it may be the intention of the Seller or Buyer or both to effect a tax-deferred exchange. Either the Seller or Buyer or both may assign his/ her rights in the contract to a Qualified Intermediary for the purpose of effecting a tax-deferred exchange. The Parties agree to cooperate and execute the necessary documents to allow either or both Parties to effect such exchange at no additional cost or liability to the other Party. However, any warranties that may be expressed in this contract shall remain and be enforceable between the Parties executing this document.

**25.  MEDIATION.** Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the Parties may pursue legal remedies as provided by the Contract.

**26.  NON-FOREIGN SELLER.** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer should withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms.  Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**27.  NOTICES.** Any notice provided for herein shall be given to the Parties in writing, through their respective broker, if applicable, and sent by: (a) personal delivery, (b) United States mail, postage prepaid, or (c) by facsimile or other electronic means, to the Escrow Agent, as defined in Terms Paragraph 4.B. herein.

**28.  BROKER RELATIONSHIP DISCLOSURE/COMMISSION.** Buyer acknowledges and confirms that the Broker providing brokerage services to the Buyer has described and disclosed their duties and responsibilities to the Buyer prior to the Buyer signing this Contract.

☐ (Applicable for in-house transactions only) Buyer acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

Seller acknowledges and confirms that the Broker providing brokerage services to the seller has described and disclosed their duties and responsibilities to the seller prior to the seller signing this Contract.

☐ (Applicable for in-house transactions only) Seller acknowledges and confirms that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract.

Seller further acknowledges receipt of Estimate of Costs associated with this transaction and that a Residential sales Contract Information Booklet has been made available to the seller in print, or at www.orec.ok.gov.

**29.  DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER.** The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer and any related addenda or documents.

**30.  EXECUTION BY PARTIES.**

**AGREED TO BY BUYER:**

On This Date _____

Hunter Morris
_____
**Buyer's Printed Name**                                                    **Buyer's Printed Name**

*Hunter Morris*                      dotloop verified
                                     02/16/21 4:00 PM CST
                                     GYNP-BNX7-10MV-1TIW
_____          _____
**Buyer's Signature**                                                       **Buyer's Signature**

_____          _____
**Buyer's Printed Name**                                                    **Buyer's Printed Name**

_____          _____
**Buyer's Signature**                                                       **Buyer's Signature**

**TERMINATION OF OFFER.** The above Offer shall automatically terminate on _____ at 5:00 p.m., unless withdrawn prior to acceptance or termination.

**AGREED TO BY SELLER:** Seller accepts the foregoing offer and shall sell the above described Property on the terms and conditions herein stated and shall pay the Listing Broker the compensation previously agreed upon in the Listing Agreement or other agreement of employment between them, which shall survive this Contract, for professional services rendered and to be rendered in this transaction.  *Seller further acknowledges receipt of Seller' Estimate of Expenses in regard to this transaction and the Confirmation and Acknowledgement of Disclosures prior to Seller's Acceptance.*

On This Date _____

_____          _____
**Seller's Printed Name**                                                   **Seller's Printed Name**

_____          _____
**Seller's Signature**                                                      **Seller's Signature**

_____          _____
**Seller's Printed Name**                                                   **Seller's Printed Name**

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

**OREC FARM, RANCH, AND RECREATIONAL SALE (01-2019)**

Page 7 of 8

Farm and Ranch Contract: <u>3484 Mullendore Ranch Rd, Copan, OK 74022</u>
Property Identifier

# ASSOCIATE INFORMATION

**SELLING BROKER/ASSOCIATE:**

<u>Sloan Smith 181457</u>
**OREC** Associate License Number

<u>Great Plains Land Company, LLC</u>
**OREC** Company Name

<u>179319</u>
**OREC** Company License Number

<u>505 W. Main, Yukon, OK 73099</u>
Company Address

<u>4052550051</u>
Company Phone Number

<u>sloan@greatplains.land</u>
Associate Email                              Date

**LISTING BROKER/ASSOCIATE:**

**OREC** Associate License Number

**OREC** Company Name

**OREC** Company License Number

Company Address

Company Phone Number

<u>jwildin@hallandhall.com</u>
Associate Email                              Date

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission

OREC FARM, RANCH, AND RECREATIONAL SALE (01-2019)

Page 8 of 8

# OKLAHOMA REAL ESTATE COMMISSION

*This is a legally binding Contract; if not understood, seek advice from an attorney.*

## FARM, RANCH, AND RECREATIONAL LAND - EXHIBIT A

This Exhibit A, which is attached to and is part of the Oklahoma Uniform Contract of Sale of Real Estate between

_____ ("Seller") and

Hunter Morris and/or assigns _____ ("Buyer")

relating to the following described real estate located in Osage County & Washington County _____ County, Oklahoma, at:

(Legal Description or Property Address)3484 Mullendore Ranch Rd, Copan, OK 74022

Notwithstanding any provision in this Contract to the contrary, it shall be an express condition of the Buyer's closing obligations that Buyer assumes, with the Bureau of Land Management's ("BLM") approval of Buyer, or Buyer's applicable affiliate at closing (as the case may be), the BLM Sanctuary Horse Program Agreement ("BLM Agreement") currently benefitting the Property (which was recently renewed in January of 2020 for a 10 year term), upon (i) the existing terms and conditions of the BLM Agreement, and (ii) terms reasonably acceptable to Buyer upon Buyer's receipt and review of the BLM Agreement.  In addition to Seller's obligations to provide Buyer with a copy of the BLM Agreement as set forth in Section 11 of the Contract, Seller shall provide Buyer copies or access to any written communication from the BLM or other government entities applicable to the BLM Agreement.  Seller further agrees to make commercially reasonable efforts, at no expense to Seller, in cooperating with Buyer and BLM to facilitate the BLM Approval and all documents necessarily required in connection therewith.

_____

_____

_____

_____

_____

_____

_____

_____

_____

All the other terms and conditions of the Uniform Contract of Sale of Real Estate shall remain the same.

| *Hunter Morris* | dotloop verified<br>02/16/21 4:07 PM CST<br>8BPL-BGGG-XORI-7EXB | |
|---|---|---|
| Buyer's Signature | Date | Seller's Signature            Date |
| Buyer's Signature | Date | Seller's Signature            Date |

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.

OREC EXHIBIT A SUPPLEMENT (11-2014)

## LEGAL DESCRIPTION SUPPLEMENT

The following constitutes a preliminary listing (taken from ad valorem tax records) of the lands within the Mullendore Cross Bell Ranch and is subject to correction

| Assessor | County | Parcel No. | Acreage | LEGAL | SEC |
|----------|--------|-----------|---------|-------|-----|
| | Chautauqua, KS | | 38.60 | SEC 18 TWP 35 RNG 13E S18, T35, R13E | |
| Sally Hulse | Osage, OK | 12018-5-28-12 | 12.00 | HULAH LOTS 1 THRU 12 BLK 2 | |
| | | 12022-5-28-12 | 6.00 | HULAH LOTS 1 THRU 6 BLK 3 | |
| | | 12029-5-28-12 | 1.00 | HULAH LOT 1 BLK 4 | |
| | | 12031-5-28-12 | 16.00 | HULAH LOTS 2 THRU 17 BLK 4 | |
| | | 12033-5-28-12 | 2.00 | HULAH LOTS 1 THRU 2 BLK 5 | |
| | | 12035-5-28-12 | 22.00 | HULAH LOTS 3 THRU 24 BLK 5 | |
| | | 12037-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 10 | |
| | | 12080-5-28-12 | 16.00 | HULAH LOTS 1 THRU 16 BLK 11 | |
| | | 12082-5-28-12 | 6.00 | HULAH LOTS 19 THRU 24 BLK 11 | |
| | | 12084-5-28-12 | 19.00 | HULAH LOTS 1 THRU 19 BLK 12 | |
| | | 12086-5-28-12 | 2.00 | HULAH LOTS 21 THRU 22 BLK 12 | |
| | | 12088-5-28-12 | 1.00 | HULAH LOT 23 BLK 12 | |
| | | 12089-5-28-12 | 1.00 | HULAH LOT 24 BLK 12 | |
| | | 12090-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 13 | |
| | | 12092-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 LK 16 | |
| | | 12095-5-28-12 | 17.00 | HULAH LOTS 1 THRU 17 BLK 17 | |
| | | 12276-5-28-12 | 6.00 | HULAH LOTS 19 THRU 24 BLK 17 | |
| | | 12277-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 18 | |
| | | 12280-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 19 | |
| | | 12283-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 24 | |
| | | 12286-5-28-12 | 12.00 | HULAH LOTS 1 THRU 12 BLK 25 | |
| | | 12287-5-28-12 | 2.00 | Sarah & Joe McGuire  HULAH LOTS 13 THRU 14 BLK 25 | |
| | | 12289-5-28-12 | 10.00 | HULAH LOTS 15 THRU 24 BLK 25 | |
| | | 12290-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 26 | |
| | | 12292-5-28-12 | 24.00 | HULAH LOTS 1 THRU 24 BLK 27 | |
| | | 12293-5-28-12 | 23.00 | HULAH LOTS 1 THRU 23 BLK A | |
| | | 12295-5-28-12 | 13.00 | HULAH LOTS 1 THRU 13 BLK B | |
| | | 33994-15-29-12 | 23.70 | LOTS 1, 4 | |
| | | 33995-15-29-12 | 12.50 | Alred Melessa Revelette etal  LOT 2 | |
| | | 33996-15-29-12 | 12.50 | Katsy Mullendore Mecom LOT 3 | |
| | | 33997-16-29-12 | 623.20 | SE, SW, S/2 NE, S/2 NW, LOTS 1,2,3,4 | |
| | | 33998-17-29-12 | 540.00 | SW. W/2 SE. S2 NW, LOTS 1,2,3,4 | |
| | | 33999-17-29-12 | 80.00 | E/2 SE | |
| | | 34001-18-29-12 | 611.40 | SE, E/2 SW, S/2 NE, SE NW, LOTS1,2,3,4,5,6,7 | |
| | | 34003-19-29-12 | 200.00 | Katherine Boren  NE NE, SW NE, SE NW, NW SE, NE SW | |
| | | 34004-16-25-12 | 433.70 | LOTS 1,2,3,4 NW NE, NE NW, SE NE, S/2 SE, SE SW | |
| | | 34006-20-29-12 | 200.00 | Katherine Boren  W/2 NE, E/2 NW, NW NW | |
| | | 34007-20-29-12 | 360.00 | NE SE, SW SE, E/2 NE, SW, SW NW | |
| | | 34008-20-29-12 | 80.00 | Katherine Boren  NW SE, SE SE | |
| | | 34009-21-29-12 | 80.00 | N/2 NW | |
| | | 34010-21-29-12 | 480.00 | NE, SE, E/2 SW, S/2 NW | |

| Assessor | County | Parcel No. | Acreage | LEGAL | SEC |
|----------|--------|-----------|---------|-------|-----|
| | | 34011-21-29-12 | 80.00 | Katherine Boren  W/2 SW | |
| | | 34012-22-29-12 | 51.38 | LOTS 1,2,3,4 | |
| | | 34013-27-29-12 | 64.38 | LOTS 1,2,3,4 | |
| | | 34014-28-29-12 | 560.00 | NE, SE, E/2 NW, E/2 SW NW NW, SW SW | |
| | | 34015-28-29-12 | 80.00 | Katherine Boren  SW NW, NW SW | |
| | | 34016-29-29-12 | 480.00 | NW, SW, SE | |
| | | 34017-29-29-12 | 160.00 | NE | |
| | | 34018-30-29-12 | 537.87 | LOTS 1,4 NE, SE, E/2 SW, S/2 SE NW, NE NW | |
| | | 34019-30-29-12 | 97.87 | Katherine Boren  LOTS 2,3 N/2 SE NW | |
| | | 34020-31-29-12 | 638.42 | LOTS 1,2,3,4, NE, SE E/2 NW, E/2 SW | |
| | | 34022-32-29-12 | 640.00 | SE, SW, NE, NW | |
| | | 34023-33-29-12 | 640.00 | SE, SW, NE, NW | |
| | | 34024-34-29-12 | 72.00 | LOTS 1,2,3,4 LESS R/R | |
| | | 34178-3-28-12 | 279.88 | LOTS 1,2,3,4,5 W/2 SW, SW NW LESS 2A RR | |
| | | 34188-4-28-12 | 490.73 | LOTS 1,2 S/2 NE, LOTS 3,4 S/2 NW, NW SW, E/2 SE | |
| | | 34189-4-28-12 | 22.54 | SW SW LESS 17.46A | |
| | | 34191-4-28-12 | 143.13 | E/2 SW, W/3 SE LESS 16.87 AC RR | |
| | | 34199-5-28-12 | 613.49 | LOTS 1,2 S/2 NE, LOTS 3,4 S/2 NW, SW & SE | |
| | | 34206-6-28-12 | 275.82 | LOTS 1,2 S/2 NE, LOT 3 & SE NW & NE SW | |
| | | 34209-6-28-12 | 55.18 | S/2 SE | |
| | | 34218-6-28-12 | 80.00 | N/2 SE | |
| | | 34225-7-28-12 | 371.63 | SE | |
| | | 34228-7-28-12 | 6.57 | NW NE - N 7 W OF RR | |
| | | 34234-8-28-12 | 549.49 | NE, NW | |
| | | 34244-9-28-12 | 606.57 | NW, SE, SW | |
| | | 34247-10-28-12 | 265.54 | LOTS 1,2,3,4, W/2 SW, W/2 NW | |
| | | 34250-15-28-12 | 84.40 | LOTS 1,2,3,4, W/2 SW, W/2 NW | |
| | | 34251-16-28-12 | 507.21 | ALL OF SECTION | |
| | | 34253-17-28-12 | 37.68 | THAT PART OF N/2-N OF CANEY RIVER & E OF LOST CREEK | |
| | | 34344-33-28-12 | 1.62 | NE LY N OF CO RD | |
| | | 34691-15-29-11 | 5.00 | N/2 OF SE 10 A OF LOT 3 | |
| | | 51355-246302017 | | PERSONAL TAX | |
| | Total Osage | | 12,614.40 | | |
| | | | | | |
| Melissa Thombrugh | Washington, OK | 3399 | 20.00 | E 1/2 SW NW: | |
| | | 7443 | 465.40 | ENTIRE SECTION | |
| | | 7444 | 289.24 | ENTIRE SECTION | |
| | | 7445 | 388.95 | ENTIRE SECTION | |
| | | 7446 | 608.41 | ENTIRE SECTION | |
| | | 7447 | 30.00 | SE NW NW: E 12 SW NW | |
| | | 7448 | 288.34 | E 1/2 NW:E 1/2 NEW NW: SW NW:W 1/2 SW & W 1/2 E 1/2 SW | |
| | | 7450 | 10.00 | SW NW NW | |
| | | 7451 | 20.00 | S 1/2 NE NE | |
| | | 7452 | 144.72 | ENTIRE SECTION | |

2

| Assessor | County | Parcel No. | Acreage | LEGAL | SEC |
|---|---|---|---|---|---|
| | | 7457 | 12.00 | BEG APPROX 1914' E OF NW COR OF SEC FOR POB; | |
| | | 8181 | 547.64 | LOTS 1, 2, 3, 4: S 1/2 NW: SW 1/4:SE 1/4 | |
| | | 8182 | 5.00 | W 1/2 OF SW 10 AC OF LOT 7:5.00 AC | |
| | | 8183 | 20.00 | N 1/2 SE NW | |
| | | 8184 | 432.32 | LOTS 5,6,7, 8 | |
| | | 8185 | 80.00 | S 10 AC OF LOT 8, LOT 9, LOT 10 | |
| | | 8187 | 479.86 | W 1/2 NE: E 1/2 NW: LOT 5-8 | |
| | | 8188 | 570.00 | NW 1/4: NW SW: E 1/3 SE: N1/2 NW SE: E 1/2 SW SE: SW SW SE:S | |
| | | 8189 | 50.00 | NW SW SE: NE SW: | |
| | | 8190 | 20.00 | S 1/2 NW SE | |
| | | 8193 | 487.85 | E 1/2 OF SE LESS | |
| | | 8194 | 40.00 | N 1/2 n 1/2 NW | |
| | | 8196 | 550.88 | ENTIRE SECTION EXCEPT THE NW NW SE | |
| | | 8197 | 10.00 | NW NW SE | |
| | | 8198 | 80.00 | E 1/2 NE | |
| | | 8199 | 483.20 | LOT 5-8 E 1/2 SW: SE 1/4: NE NW: SE NW:W 1/2 NE | |
| | | 8200 | 332.78 | SW SW: SE SE SWIS 1.2 SW SE | |
| | | 8201 | 10.00 | SW SE SW | |
| | | 8202 | 40.00 | N 12 SW: M 12 SW SE | |
| | | 26411 | 30.00 | SE NE NE & N 1/2 SE NE | |
| | Total Washington | | 6,546.59 | | |
| | Total Ranch | | 19,199.59 | | |

3

## SUPPLEMENT TO OKLAHOMA UNIFORM CONTRACT
## OF SALE OF REAL ESTATE

This Supplement is executed on the date set forth opposite the signatures of the parties by and between Hunter Morris (herein "Buyer") and the Kathleen B. Mullendore Trust (herein "Seller"), WITNESSETH:

### RECITALS

1. The Seller and Buyer desire to execute this Supplement for the purposes of revising and modifying the Oklahoma Uniform Contract of Sale of Real Estate (the "Contract") to which this Supplement is attached and adding certain additional provisions to the Contract.

2. It is the desire of the undersigned parties that the Contract, as modified by this Supplement, shall govern the rights and obligations of the parties hereto.

### MODIFICATIONS AND ADDITIONS TO THE CONTRACT

3. Section 2A(1). The following language shall be added:

The parties acknowledge that no mineral interest are owned by Seller on that portion of the Property situated in Osage County, State of Oklahoma, for the reason that all of the oil, gas and other minerals in and under the Osage County portion of the Property have been reserved in trust by the United States of America for the benefit of the Osage Tribe of Indians.

4. Section 4A. The Purchase Price shall be the sum of

5. Section 4B. The Earnest Money shall be deposited with Musselman Abstract Company of Bartlesville, Oklahoma, as escrow agent.

6. Section 4E shall be deleted and the following substituted therefor:

The Purchase Price will be calculated on the basis of ▮▮▮▮▮ per acre. If it is determined by the parties that the total number of acres owned by Seller is more or less than 19,200 acres (inclusive of the 40 acres located

in Chautauqua County, Kansas), the Purchase Price should be accordingly adjusted on the basis of $_____ per acre. If the Purchase Price is required to be adjusted by more than 2.5% for more or less acreage than the recited 19,200 acres, either party may terminate this Contract by providing written notice to the other. The parties acknowledge that there are a few small tracts within the ranch property currently titled in third parties, including a few tracts which remain titled in Kathleen B. Mullendore (a/k/a Katherine B. Mullendore) and which were never transferred into the trust of Kathleen B. Mullendore. The parties also acknowledge that there is currently on file a probate proceeding in the District Court of Osage County, Oklahoma, for the probate of the Kathleen B. Mullendore Will which will, in due course, accomplish the transfer of those tracts into the Kathleen B. Mullendore Trust.

7. Section 7C shall be deleted and the following substituted therefor:

Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any title requirements reflected in an Attorney's Title Opinion, or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the parties agree to the following:

(1) Seller, at Seller's expense, may cure the title requirements identified by Buyer;

(2) The Closing Date may be delayed for 30 days, or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's title requirements. In the event Seller cures Buyer's objections prior to the delayed Closing Date, Buyer and Seller agree to close within five days of notice of such cure. In the event the title requirements are not cured by Seller within the agreed time the Buyer may cancel the Contract and receive a refund of the Earnest Money;

(3) In the event Buyer's title requirements cannot be cured within the time set forth in

the immediately preceding paragraph, but are capable of being cured by Sellers, by means of litigation or otherwise, within a reasonable time following the Closing Date, at buyers sole discretion the parties will endeavor to agree upon an amount of the Purchase Price to be retained in escrow by the Title Company for the purpose of assuring the Buyer and the Title Company that such title objections will be cured by Seller within a reasonable time following Closing Date, and, following such cure, such escrowed funds will be paid to Seller.  Unless otherwise agreed by the parties, the amount of the Purchase Price to be escrowed until such title requirements are cured by Seller shall be the sum of $____ per acre for those portions of the Property affected by such title objections.

(4) Buyer agrees to accept title subject to:

(a) utility easements servicing the Property; (b) building and use restrictions of record; (c) zoning regulations; (d) pipeline easements and roadway easements of record or in place; and (e) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.

8. Section D(4).  This Section shall be modified as follows:

The following leases will be permitted exceptions to the Title Policy and will not be a basis for objections to Title: Oil and gas leases; Supplemental Agreement with Enbridge relating to post-construction usage of the Property; unexpired terms of two hunting leases; and the Sanctuary Horse Program Agreement with the Bureau of Land Management.

*all documents pertaining to the Supplemental Agreement with Endbridge, unexpired terms of the hunting leases, and the Sanctuary Horse Program to be delivered within 5 business days from mutually executed contract.

9.  Section 12.  Section 12 is hereby deleted.

10. Section 16. There shall be added to the special provisions the following:

3. None of the household furniture, furnishings or appliances (except those appliances permanently affixed to the Property) shall be included in the sale and the Seller shall have a period of 30 days following Closing Date to

remove the same from the residences situated on the Property.

4. Buyer recognizes that there is a burn pit located on the Property which has been utilized by Seller for the burning of trash and debris and that the existence of such burn pit is acceptable to Buyer.

5. Buyer recognizes that there is currently located on the Property an underground gasoline storage tank which has not been utilized for in excess of ten years and that the existence of the same is not objectionable to Buyer.

6. Buyer recognizes that there is a family cemetery located on the Property which will be excluded from sale by Seller to Buyer, subject to the commitment of Seller to maintain the family cemetery property and, prior to Closing Date, Seller and Buyer shall agree upon the specific legal description of the cemetery property as well as a means of perpetual access by the Seller and members of the family of Kathleen B. Mullendore thereby allowing such family members ingress and egress between the cemetery property and a public roadway.

The Contract as modified by this Supplement shall be binding upon and inure to the benefit of the Buyer and Seller and their respective heirs, devisees, personal representatives, successors and assigns.

Executed on the date set forth opposite the signature of the parties.

SELLER

KATHLEEN B. MULLENDORE TRUST

3/4/21
_____
Date

By_____
   John Mecom, III, TRUSTEE

03/05/2021
_____
Date

BUYER
_Hunter Morris_    dotloop verified
                   03/05/21 6:44 PM CST
                   JQSU-AMZD-R6C6-KVYP
Hunter Morris